UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

_____

|  |  |
|---|---|
| TERESA PERRY McCABE | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Docket No. 25-cv-_____ |
|  | ) |
| JEVIN FORTIN; HAWLEY RAE; and NEW | ) |
| HAMPSHIRE STATE POLICE. | ) |
| , | ) |
|  | ) |
| Defendants. | ) |

_____ )

## VERIFIED COMPLAINT

### Introduction

Plaintiff, Teresa Perry McCabe ("Plaintiff" or "McCabe") files this Verified Complaint against two Troopers employed by the New Hampshire State Police ("NHSP"). As is detailed herein, McCabe's claims are based on the manner in which she was pursued, ordered to pull her vehicle over, and then physically apprehended and assaulted as she was forcibly and excessively ripped out of her vehicle by both law enforcement officers. It is McCabe's contention that the conduct of Fortin and Rae was improper, unjustified, and unlawful in violation of her civil rights, and that she has suffered physical injuries and resulting emotional distress as a result of the unfortunate ordeal.

### Parties

1. McCabe is an individual who resides at 22 Fawn Drive, Silver Lake, New Hampshire.

2. Upon information and belief, Defendant Jevin Fortin ("Fortin"), is an individual who, at all relevant times, was employed by the NHSP as a Trooper.

3. Upon information and belief, Defendant Hawley Rae ("Rae"), is an individual who, at all relevant times, was employed by the NHSP as a Trooper.

4. Defendant, NHSP is a law enforcement agency operated by the State of New Hampshire, organized under the laws of the State of New Hampshire. Upon information and belief, the NHSP is responsible for establishing policies and procedures for law enforcement officers employed by the State of New Hampshire, and is located at 33 Hazen Drive Concord, New Hampshire.

## Venue & Jurisdiction

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 14 U.S.C. § 1983, and 28 U.S.C. § 1367(a).

6. Defendants are subject to personal jurisdiction in the State of New Hampshire, and venue in this action is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## Relevant Facts

7. November 15, 2022 was a cold, dark, and rainy night. It had been raining all day in Connecticut, Massachusetts and New Hampshire, with a misting and very light rain.

8. McCabe had driven from Connecticut where she had seen a physician and had visited with a friend, and she was returning home to Silver Lake where she lives with her husband, Matthew McCabe. As she drove, with her wipers on low, the road was wet.

9. At 9:20 or 9:21pm, and only 16 minutes from her home, she was driving along RT. 16 N aka White Mountain Highway at mile marker 50.8 when she was pulled over by Fortin.

10. Just prior to being pulled over, she had reached for her stainless-steel water bottle located on the passenger side floor at mile marker 50.0. In doing so, she swerved slightly over

2

the white line by approximately 6 inches in front of a dark NHSP cruiser parked at the Napa/Buchanon parking lot at mile marker 50.0 in a 40mph zone.

11.     McCabe was unsuccessful in getting the water bottle on this attempt. Accordingly, at mile marker 50.4 she attempted again to retrieve water bottle, only this time with success.

12.     At mile marker 50.8, Fortin suddenly pulled up behind her vehicle with a bright high beam of headlights and his cruiser's blue lights on. McCabe was startled, but she immediately pulled her vehicle over to the side of the road.

13.     McCabe was tired and needed to use the lady's room very badly. She obtained her driver's license from her purse to be helpful and to help expedite the stop.

14.     As a male figure was approaching her vehicle, she remembered the driver's side window of her vehicle was broken and unable to open electronically. Given this issue, she decided to slowly and gently open the door with her driver's license through the crack of the door opening. Indeed, she waived her license in a friendly manner.

15.     As Fortin approached her vehicle, he looked disheveled. He was wearing a tan State Trooper's hat, a black disheveled black shirt, no name tag, and tan trooper trousers with a green strip running down the side of his pants. As well as wearing scuffed brown steel-toed Limmer style boots.

16.     McCabe had never been pulled over by an officer not in complete uniform and no name tag before. She was suddenly fearful.

17.     As he arrived at her vehicle, Fortin seemed surprised that her driver's side door was slightly open, and therefore, McCabe stated in a polite tone, "Excuse me sir, my window is broken". She proceeded to explain that the vehicle had been at Northern Tire the previous day to fix the window but due to the holiday the part did not come in. She explained that she needed her

vehicle because she had been waiting months for a doctor's appointment in Greenwich, CT. She informed Fortin that the window was going to be fixed in the coming days.

18.     Fortin asked if she would repeat verbatim what she had just said so that he could record it on his body worn camera, while pressing the small black camera that was attached to his chest, which said "recording". McCabe asked if she needed to repeat the statements verbatim. He said yes, verbatim.

19.     Upon complying with his request, Fortin walked to the rear of McCabe's vehicle and then returned to the driver's side door for the second time.

20.     At that point, he started to interrupt McCabe, taking her words, and stating things that he would not know unless she already told him.

21.     After he and McCabe had spoken for about 5 minutes, Fortin stated, "I smell something".  McCabe's response was "that is not true". He then asked, "did you just spray perfume?" as he lit the interior cabin of McCabe's vehicle and watched her hand while she retrieved her registration. McCabe's response was "that is not true, that is a lie".

22.     Fortin then proceeded to tell McCabe that there was alcohol in her water bottle. Again, she responded, "now, I know you are lying" because the water bottle contained only water.

23.     Fortin then escalated the exchange by stating "you are disobeying a police officer because you are not handing me your license and registration." McCabe's response was "that is not true, I have handed you my license and registration three times now. You keep handing it back to me."

24.     Despite McCabe being polite, respectful, and compliant with Fortin, Fortin's tone and attitude were aggressive and threatening, and his questioning of McCabe scared her. She felt

4

so afraid and vulnerable that she placed a call to her husband and voiced her concern that Fortin might hurt her.

25.    Fortin called for backup reporting that McCabe was not being cooperative, which was false as she complied with all his demands and instructions.

26.    Shortly thereafter, Rae arrived and immediately went over to where Fortin was located outside the driver's side door of McCabe's vehicle. McCabe, still on her cell phone, informed her husband that she felt some relief because Rae was a female police officer and was in full uniform.

27.    Rae approached McCabe while she was on the phone with her husband. In a quiet voice with her mouth next to McCabe's ear and her nose near McCabe's mouth, Rae asked McCabe if she could help them get her out of the vehicle so that she would not get hurt. McCabe agreed to comply.

28.    Rae told McCabe to listen to and follow her instructions very carefully first without doing anything. McCabe agreed.

29.    Rae then stated that she was going to repeat the instructions, and that McCabe was to follow them exactly. Again, McCabe agreed.

30.    Rae then told McCabe to put her hands on the steering wheel and to set her cell phone down. McCabe complied.

31.    McCabe put her phone on the dash just above the steering wheel, then proceeded to put both hands on the steering wheel.

32.    Rae then instructed McCabe to start with her feet, her ankles, her knees, and her hips, and move them to the left, resting her feet in the door opening.

33.     Rae insisted that McCabe was not to move her feet until they told her too. Again, McCabe agreed to comply and followed Rae's instructions.

34.     Rae then instructed McCabe to un-click her seatbelt with only one hand and then place that hand back on the steering wheel. Again, McCabe complied.

35.     McCabe was then instructed to place her hands behind her back. Attempting to comply, McCabe tried doing this simultaneously, which was unsuccessful because there was not enough room to do this with both hands simultaneously between the seat and the steering wheel.

36.     Intending to comply, McCabe tried again, this time leaning towards the center console/passenger side with her head and upper body, taking one hand at a time and securing them behind her back, grabbing her cell phone from above the steering wheel with her left hand. Holding her hands behind her back along with her cell phone. Her body was now fully turned to the left, staring at the road.

37.     McCabe then overheard Rae ask Fortin if he wanted "to do this."

38.     According to McCabe, there was a non-verbal response. She did not hear an answer. She was just staring at the road in disbelief what was occurring. She was not under the influence of any alcohol, medication or other unlawful substance. She had not exceeded the posted speed limit.

39.     Rather, she had simply reached over to pick up her water bottle trying to get a drink of water before she got home because she was thirsty.

40.     As McCabe sat quietly in the driver's seat with her feet resting in the opening of the car door, as she was ordered to do, and simply waiting for instruction, Rae suddenly counted to three, and without warning both her and Fortin grabbed McCabe's shoulders at the same time.

41. Rae was on McCabe's left and Fortin on her right. They were aggressive. They were violent. They were hurting her.

42. Fortin's aggressive grabbing of McCabe's right shoulder caused her immediate pain and she screamed. She was terrified and began to cry, repeatedly begging them to be careful of her shoulders.

43. Rae and Fortin pushed her onto the road face down on her stomach. They then pulled her to her feet.

44. Now standing, she put her hands behind her back, complying with them. McCabe noticed that a third officer, a male in tactical gear, had arrived.

45. The entire time Fortin kept yelling at McCabe to put her hands behind her back. McCabe complied with Fortin's instructions. She was squeezing her arms as tightly as she could to her sides and pressing her hands against her buttocks, complying fully.

46. With her eyes locked on the third officer dressed in black tactical gear, she observed him holding a flashlight. It was very dark, and he was walking backwards and lighting the way for her to walk. She took a few steps when suddenly Fortin (on her right), reached over her body and aggressively grabbed her crotch up, underneath her skirt, lifting her legs and feet off the ground.

47. Startled and terrified, McCabe screamed loudly and was asking what he was doing. At the same time, Rae shoved her hand down McCabe's shirt towards her brassier. Both Rae and Fortin were wearing latex gloves. Rae informed McCabe that they were searching her for drugs or weapons. McCabe responded that she has neither on her person nor in her vehicle.

48. Rae then asked McCabe if she had anything sharp in her pockets. McCabe asked what she meant by this. Rae responded by saying, "anything sharp, that I will get hurt on!?!"

McCabe answered by saying she was unsure what items she had in her pockets, but it was probably chap-stick, lip balm and doggy poop bags. Again, McCabe was compliant.

49.     Fortin then tried to throw McCabe to the ground by trying to throw her off balance. McCabe did not resist but kept her balance.

50.     Fortin then instructed McCabe that he was moving her to front of his cruiser.

51.     Confused and terrified, McCabe complied while fearing that she was going to be sexually assaulted.

52.     Suddenly, McCabe was pushed violently onto the front of the cruiser, over the front tow-grill, with the right post in the center of her sternum. At the same time, she was being jumped on from behind by Fortin (on her right side) and Rae (on her left side). McCabe's face (straight on) broke the fall for all of them and there was a loud boom as her body made contact with the hood of the cruiser. She struck her teeth, her right collar bone, shoulders, abdomen, her pelvis, pubic bones – all the way thru to her lumbar-sacral spine – and her right leg and both knees.

53.     McCabe's face hit the hood of the cruiser so hard that her head bounced causing her to briefly lose consciousness. Once she regained consciousness she immediately started crying and turned her head to the left pleading with Rae and asking, "why are you doing this to me?!? Why are you hurting me?!"

54.     Fortin (from the right) then grabbed both of her shoulders and forcibly slammed the right side of her face down onto the hood of the cruiser. Again, the force caused her head to bounce off the surface.

55. Rae took her entire weight and with her hands pressed on McCabe's left jawbone, pushing forward and down to hold her head on the cruiser. McCabe felt something pop in the middle of her mouth from the sheer force of what they were doing to her.

56. As would be expected, McCabe was now screaming and crying with pain, discomfort and fear.

57. McCabe felt Fortin aggressively punching (multiple times) her right shoulder, neck, and back of her head, while Rae held McCabe's head down.

58. At some point, Fortin kicked McCabe's knees with his steel-toed combat "Limmer style" boots.

59. Fortin and Rae then grabbed her arms and moved them up and down a few times. McCabe did not resist.

60. She was a limp rag doll, easy to move, and did not want to be resisting them in any way. She let them do what they wanted with her body.

61. Despite her compliance, Fortin slammed her head and neck down on the cruiser again for the third time, again hitting so hard her head bounced on her chin. Then they placed her in a "T" position on the hood of the car to put her in handcuffs.

62. Fortin and Rae then lifted her off the cruiser hood.

63. Suddenly, McCabe felt the urgent need to urinate and defecate at the same time, something she had never experienced before. She was in so much pain and did not know what to do, except comply with Fortin's demands of her. She jumped up and down to try to control her bathroom issues and avoid soiling herself.

64.     As Fortin was putting her in the back of the cruiser, he put his hand on the back of her head and aggressively forced her head and face down below her knees, while yelling at McCabe to pick up her feet to get into the back of the cruiser.

65.     McCabe was compliant but could not figure out how to get in the cruiser with her feet as her right leg was having a hard time bearing weight when she lifted her left leg.

66.     Fortin then drove McCabe to Huggins Hospital for blood work.

67.     McCabe's blood test results revealed no alcohol or narcotics.

68.     Upon leaving Huggins Hospital, Fortin methodically and purposely placed handcuffs on McCabe's wrist bones too tight. McCabe brought this to Fortin's attention, but, according to McCabe, Fortin chose to clamp the cuffs down even tighter on McCabe's wrist bones.

69.     While putting McCabe back in the cruiser, she felt him rub the crotch of his pants against her hands. McCabe said "I do not want my hands touching your pants. It's creepy." Fortin replied, "I'm creepy." McCabe did not reply for fear of more retaliation.

70.     McCabe was charged with "disorderly conduct" based on having made "loud noises" in public based on how she responded to what Fortin and Rae did to her.  At the advice of her criminal defense attorney, rather than incur the expense of a trial, she reluctantly entered into a guilty plea of a misdemeanor.

71.     McCabe suffered physical and emotional injuries as a result of the events described herein.

72.     In particular, she suffered with three fractured teeth (8, 9 & 12). She suffered injury to her left and right jawbone when her teeth were pressed in (creating a narrow and high

10

pallet) causing breathing issues and an altered bite. She suffered with an "S" curved deviated septum which has caused her to experience breathing problems.

73.    She suffered with a traumatic brain injury.

74.    She suffered with herniated disks in her spine.

75.    She suffered a separated clavicle (scapula) and fracture of right collarbone. Multiple fractures to her pelvis and cervical spine, lumbar spine, inner cranial nerve damage resulting in Horner's Syndrome in her right eye.

76.    She suffered cuts and bruises resulting in unsightly scaring.

77.    Additionally, the ordeal has caused her to suffer severe and unrelenting emotional distress.

78.    It is McCabe's contention that video footage of the incident described herein, including footage of her being pulled over and forcibly removed from her vehicle, and then subject to excessive use of force, was improperly and unlawfully modified and/or destroyed.

### COUNT I
### Violation of the Fourth Amendment (42 U.S.C. § 1983)

79.    Plaintiff incorporates the preceding paragraphs herein.

80.    McCabe was protected from unreasonable search and seizure of her person by and pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and was entitled to be safe and secure from undue and unreasonable excessive force.

81.    Officers Fortin and Rae, acting under the color of state law, unjustifiably ordered her to pull her vehicle over, and then physically apprehended and assaulted her as she was forcibly and excessively ripped out of her vehicle by both law enforcement officers under circumstances where no reasonable law enforcement officer would have done so.

11

82.    As a direct result of their unreasonable and unlawful conduct including improperly, unjustifiably, and unlawfully violating her civil rights, McCabe has suffered physical injuries and resulting emotional distress as a result of the unfortunate ordeal.

83.    The acts and omissions of Fortin and Rae were an extreme and excessive seizure unjustified by cause, were objectively unreasonable based on the totality of the circumstances, and violated the Constitutional rights held by McCabe

**COUNT II**
**Violation of the Fourth Amendment under *Monell v. Dep't of Soc. Servs.* (42 U.S.C. § 1983)**

84.    Plaintiff incorporates the preceding paragraphs herein.

85.    The actions of Fortin and Rae were endorsed and approved by their respective departments. As a direct result of the policies, practices, customs and procedures in responding to a perceived emergency, McCabe was deprived of her constitutional right to be free from unreasonable searches and seizures guaranteed to her by the 4th and 14th Amendments to the United States Constitution.

86.    The policy endorsed by police department policy makers, which includes the escalation tactics that led to excessive force to be used under the circumstances herein violates the 4th and 14th Amendment protections held by McCabe.

87.    The escalation of the events on November 15, 2022, and Fortin's and Rae's use of objectively unreasonable and excessive force as set out above is in accordance with the Defendant NHSP's policies, procedures, practices, and customs relating to the traffic stops.

88.    At all material times, the individual agents and officers followed the policies, procedures, customs, and practices of and acted under color of law.

89.    The deficient policies, procedures, customs, and practices of the NHSP are a direct and proximate cause of the use of excessive force. As a direct result of these policies,

12

procedures, customs, and practices, McCabe was deprived of her constitutional right to be free from unreasonable searches and seizures guaranteed to her by the 4th and 14th Amendments.

## COUNT III
### Negligence

90.    Plaintiff incorporates the preceding paragraphs herein.

91.    Fortin and Rae, as responding officers, had a duty of care to McCabe.

92.    Fortin and Rae, individually and jointly, breached their respective duties of care owed to McCabe.

93.    McCabe's horrific ordeal, including her physical and emotional injuries that she suffered as a result, could have been easily avoided if the law enforcement response was not overly militant and did not incredibly escalate the situation.

## COUNT IV
### Gross Negligence

94.    Plaintiff incorporates the preceding paragraphs herein.

95.    Fortin and Rae, as responding officers, had a duty of care to McCabe.

96.    Fortin and Rae, individually and jointly, breached their respective duties of care owed to McCabe.

97.    The acts and omissions of Fortin were grossly negligent.

98.    The acts and omissions of Rae were grossly negligent.

99.    McCabe's horrific ordeal, including her physical and emotional injuries that she suffered as a result, could have been easily avoided if the law enforcement response was not overly militant and did not incredibly escalate the situation.

**PLAINTIFF CLAIMS TRIAL BY JURY**.

Respectfully submitted,

**TERESA PERRY MCCABE,**

By its attorneys,

SHEEHAN PHINNEY BASS & GREEN PA

Date: November 17, 2025                    By:    */s/ Megan E. Hilson*

Megan E. Hilson, Esq. (NH Bar # 20520)
Damon M. Seligson, Esq. (pro have vice
pending)
1000 Elm Street, 17th Floor
P.O. Box 3701
Manchester, NH 03105-3701

14

## VERIFICATION

I, Teresa Perry McCabe, on my oath, do hereby swear, attest and affirm that the facts and allegations pled in this Verified Complaint are true and accurate, and I further attest, certify and affirm that credible evidence exists to support them.

_____    11-16-25
Teresa Perry McCabe

2